## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MAMITA'S ICES LTD., | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | **Complaint** |
| vs. | ) | |
| | ) | |
| RCS DISTRIBUTION, LLC; MARIA'S ICE CREAM LLC; | ) | Jury Trial |
| And DOES 1-10, inclusive, | ) | Demanded |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

Plaintiff Mamita's Ices Ltd. ("Plaintiff"), sues Defendant RCS Distribution, LLC, ("Defendant RCS"), Defendant Maria's Ice Cream, LLC, ("Defendant Maria's") and Does 1-10, inclusive (Defendant RCS, Defendant Maria's, and Does 1-10 jointly and severally known as "Defendants") and alleges the following:

### NATURE OF THE ACTION

1.     This is an action to collect payment from Defendants with respect to outstanding unpaid invoices in amount of $187,600 and for Defendants' infringement of Plaintiff's rights in its federally registered and common law trademarks.

2.     Plaintiff asserts claims for Defendants' failure to pay for the past purchases of Plaintiff's goods under the common law of New York; breach of contract; breach of good faith and fair dealing; unjust enrichment; and account stated.   Plaintiff also asserts trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and

1

false endorsement and association under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); unfair competition under common law; unfair competition under Section 349 of the New York General Business Law; false advertising under Section 350 of the New York General Business Law.

3.      Plaintiff seeks injunctive relief, an accounting of Defendants' sales and profits flowing from its trademark infringement, false endorsement and false association, false advertising, with Plaintiff and its goods, Plaintiff's damages, monetary restitution, attorneys' fees, costs, interests, and such other relief as the Court deems just and proper.

## THE PARTIES

4.      Plaintiff is a New York limited liability company with its primary office located in Queens County, New York.

5.      Upon information and belief, Defendant RCS is a Connecticut limited liability company with a place of business at 1000 5th Street, Suite 100, Miami Beach, FL 33139.

6.      Upon information and belief, Defendant Maria's is a Florida limited liability company with a place of business at 1000 5th Street, Suite 200, Miami Beach, FL 33139.

7.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein are designated by fictitious names, inclusive, are unknown to Plaintiff.  Plaintiff therefore sues said Defendants by such fictitious names and Does 1-10. When Plaintiff learns of the true names and capacities of said Defendants, Plaintiff will amend this pleading accordingly.

8.      Plaintiff further alleges that Does 1-10, inclusive, sued herein by fictious names are jointly, severally, and concurrently liable and responsible with the named Defendants upon the causes of action hereinafter set forth.

## JURISDICTION AND VENUE

9.      This is an action for claims under New York State law relating to Defendant RCS's, Defendant Maria's, and/or Defendants' failure to pay compensation to Plaintiff for goods purchased by Defendant RCS and/or Defendant Maria's and for violation of 15 U.S.C. §1114, 15 U.S.C. §1125(a), 15 U.S.C. §1125(c), for related claims under New York State law, including but not limited to NY GBL 349, NY GBL 350 and common law claims of trademark infringement and unfair competition.

10.     Jurisdiction over the subject matter is conferred by 28 U.S.C. §1332 (diversity of citizenship), the amount in controversy exceeding $75,000 exclusive of interest and costs, and 28 U.S.C. §1331 (federal question), and §1338 (copyright and trademark).

11.     This Court possesses personal jurisdiction over Defendant RCS and Defendant Maria's in this action by virtue of Defendants RCS and/or Maria's continuously and repeatedly conducting business in this district and/or the events giving rise to this Complaint occurred in this State and/or had their effects in the State of New York.

12.     Venue properly lies in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this matter occurred in this judicial district.  This matter also properly lies under 28 U.S.C. §1391 because Plaintiff maintains its office within this judicial district.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF:**

**PLAINTIFF'S BUSINESS**

13.     Plaintiff has been and is engaged in the business of, *inter alia*, manufacturing and selling ices and confections (the "Mamita's Products") at least as early as 2005 and continuously therefrom.  Plaintiff is a leader in the ices and confections industry.

14.     Plaintiff has continuously and pervasively utilized its brand and trademarks in the United States commerce in connection with its food products and has enjoyed tremendous success and recognition.

**PLAINTIFF'S INTELLECTUAL PROPERTY**

15.     Plaintiff is the owner of all rights, title, and interest in its trademarks and the goodwill associated therewith used in conjunction with ices and confections, including but not limited to the following registrations and is also the owner of trade dress rights and the goodwill associated therewith in its packaging for use in conjunction with ices and confections (collectively, the "Mamita's Trademarks").

a.     Plaintiff is the owner of United States Trademark Registration No. 6,596,344 for the trademark "MAMITA'S."  A copy of the registration certificate is attached hereto as **Exhibit A**. The MAMITA'S Registration is for the following goods: flavored ices and confections.

b.     Plaintiff is the owner of United States Trademark Registration No. 6,286,858 for the trademark "MAMITA'S HOMEMADE STYLE."  A copy of the registration certificate is attached hereto as **Exhibit B**.  The MAMITA'S HOMEMADE STYLE registration is for the following goods: frozen confections, namely ices.

c.      Plaintiff is the owner of United States Trademark Registration No. 3,679,821 for the trademark "MAMITA'S HOMEMADE STYLE" and design.  A copy of the registration certificate is attached hereto as **Exhibit C**.  The MAMITA'S HOMEMADE STYLE and design mark has acquired incontestable status pursuant to the Lanham Act, 15 U.S.C. §1065.  The MAMITA'S HOME MADE STYLE and design registration is for the following goods: flavored ices, frozen confections.

16.      True and correct recent photographs that accurately depict Plaintiff's trade dress used and identified with Mamita's Products are attached hereto as **Exhibit D**.  Plaintiff has continuously used its trade dress in commerce since at least as early as approximately 10/01/2018. The trade dress is distinctive, and the relevant consumers have come to associate it with a single source, Plaintiff.

a.      Plaintiff is also the owner of common law rights to the Mamita's Trademarks for its use in conjunction with ices and confections.

17.      Plaintiff owns valid and subsisting United States trademark registrations in its Mamita's Trademarks.  Additionally, Plaintiff has acquired and owns strong common law rights in its Mamita's Trademarks.

18.      Plaintiff has invested substantial resources and time in developing the Mamita's Products and having those goods advertised, promoted, and marketed under its Mamita's Marks throughout the United States and establishing the Mamita's Trademarks in the minds of consumers as the source of high-quality goods offered by Plaintiff.

19.      Due to Plaintiff's extensive and prominent use of the Mamita's Trademarks, the Mamita's Trademarks have acquired tremendous value and have become well known to the consuming public and to the industry as identifying Plaintiff exclusively as the source of ices and

confections available under the Mamita's Trademarks.  As such, due to the tremendous recognition of ices and confections bearing or sold under the Mamita's Trademarks, the Mamita's Trademarks are a source of tremendous goodwill for Plaintiff and have caused its ices and confections to be in high demand.

20.     In addition to the rights of Plaintiff in its Mamita's Trademarks as set forth above, the Mamita's Trademarks have acquired strong secondary meaning in the minds of consumers. The purchasing public immediately identifies and associates products bearing the Mamita's Trademarks and their high-quality tastes as products created and endorsed by Plaintiff.

21.     The Mamita's Trademarks are extremely important to Plaintiff.  If third parties, including Defendants RCS and Maria's, are permitted to misappropriate the Mamita's Trademarks for their own benefits or misrepresent to the consuming public the association, relationship, or affiliation with Plaintiff, Plaintiff will suffer and will continue to suffer irreparable harm.

22.     The only way to make sure that consumers are acquiring Mamita's Products is for consumers to purchase such goods from Plaintiff or from an authorized retailer.

**DEFENDANTS**

23.     Upon information and belief, Defendant RCS is a distribution company incorporated in the State of Connecticut.

24.     Upon information and belief, Defendant RCS is in the business of distributing goods, including but not limited to frozen ices and confections at least in Florida.

25.     Upon information and belief, Defendant Maria's is a distribution company incorporated in the State of Florida and is also located in Miami, Florida.

26.     Upon information and belief, Defendant Maria's is in the business of distributing goods, including but not limited to frozen ices and confections at least in Florida.

27.     Upon information and belief, Juan Cruz and Charlie Sanchez operate both Defendant RCS and Defendant Maria's.  Attached hereto as **Exhibit E-1** are true and correct images of records copied from the Florida Corporation of State and **Exhibit E-2** are true and correct images of records from Connecticut Corporation of State.

28.     The records in **Exhibit E-1** and **E-2** list Charlie Sanchez and Juan Cruz for both Defendant RCS and Defendant Maria's.

29.     In addition to Defendant RCS and Defendant Maria's being run by Charlie Sanchez and Juan Cruz, Defendant RCS and Defendant Maria's also share the same address, which is: 1000 5th Street, Miami Beach, FL 33139.  The only difference is that the suite numbers are different.

30.     It is respectfully submitted that at all times relevant herein Defendants were owned and operated by the same persons or entities, and/or acted in concert with one another to solicit and/or conduct business in the State of New York and to engage in the wrongful conduct against Plaintiff as herein alleged.

31.     From 2015 to 2019, Plaintiff sold to Defendant RCS freezers bearing Mamita's Trademarks (the "Mamita's Freezers").  The Mamita's Freezers prominently displayed **only** the Mamita's Trademarks.

32.     Part of the agreement between Defendant RCS and Plaintiff regarding Defendant RCS' use of the Mamita's Freezers was that Defendant RCS would use the Mamita's Freezers to store and sell only Mamita's Products purchased directly from Plaintiff, that Defendant RCS would not use Mamita's Freezers to store and sell ices made by companies that compete with Plaintiff

("Mamita's Competitors"), and that Defendant RCS would not display marks of Mamita's Competitors on the Mamita's Freezers.

33.     Attached hereto as **Exhibit F** are true and correct recent photographs showing the Mamita's Freezers displaying the Mamita's Trademarks.

34.     Since at least as early as 2015 and continuously therefrom, Defendants purchased Mamita's Products, on behalf of itself and on behalf of Defendant Maria's, from Plaintiff.

35.     Defendant RCS on behalf of itself and on behalf of Defendant Maria's continued to purchase Mamita's Products until on or about January, 2022.

36.     In January, 2022, Plaintiff stopped selling the Mamita's Products to Defendant RCS and/or Defendant Maria's.

37.     Defendants owes Plaintiff approximately $187,600 for Mamita's Products it purchased from Plaintiff.  As a result of Defendants' outstanding balance in the amount of not less than $187,600 owing to Plaintiff, Plaintiff stopped offering for sale and selling its ices and confections to Defendant RCS and Defendant Maria's.

38.     Plaintiff approached Defendant RCS about this matter and paying its outstanding balance, and Defendant RCS has not responded.

39.     Plaintiff also contacted Defendant RCS about this matter and the outstanding balance via email and by mail.  Defendant RCS failed to respond to Plaintiff, and as a result, this action is taken.

### DEFENDANTS' INFRINGING ACTIVITIES

40.     Upon information and belief, Defendants RCS and/or Maria's are continuing to use the Mamita's Freezers.

41.     Defendants RCS and/or Maria's have placed the Mamita's Freezers on its premises and display the Mamita's Freezers to customers, potential customers, and the public as shown in **Exhibit F**.

42.     Defendants RCS and/or Maria's are using the Mamita's Freezers to store ices made by or sourced from Mamita's Competitors.

43.     Consumers, customers, and potential customers have direct access to the Mamita's Freezers so they can help themselves to ices they choose to purchase.

44.     As a result, consumers, customers, and potential customers, when viewing the Mamita's Freezers, would see the Mamita's Trademarks on the Mamita's Freezers.

45.     Defendants RCS' and/or Maria's use of the Mamita's Trademarks on the Mamita's Freezer deceive the public into believing that Plaintiff is the sponsor or the origin of products actually sold by Mamita's Competitors.

46.     Upon information and belief, Defendants RCS and/or Maria's are using the Mamita's Freezers in bad faith to intentionally cause harm to Plaintiff.

47.     Defendants RCS' and Maria's actions have caused and/or contributed to confusion, are likely to cause confusion, mistake, or deception among the public as to the source or origin of the products stored in the Mamita's Freezers and are likely to create a false belief that the offer for sale and sale of Mamita's Competitors' products to the consuming public is authorized or sponsored by Plaintiff.

48.     As a result, Defendants RCS' and Maria's actions, unless enjoined, are causing harm and damage to the substantial goodwill that Plaintiff has developed in its marks and brand.

49.     If Defendants RCS and Maria's are not enjoined by this court from continuing their infringing activities, Plaintiff and its Mamita's Trademarks will continue to suffer immediate and irreparable harm.

## COUNT I –
## BREACH OF CONTRACT

50.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 49, above, with the same force and effect as if fully set forth herein.

51.     In 2021 and 2022, Defendants contracted with Plaintiff to purchase goods, wares, and merchandise which Plaintiff produces in the ordinary course of its business.

52.     Between October 1, 2021 and January 7, 2022, inclusive of those dates, Plaintiff, at the special instance and request of Defendants, sold and delivered goods, wares and merchandise in an agreed sum and reasonable value of One Hundred and Eighty Seven Thousand Six Hundred U.S. Dollars ($187,600.00), said sum being net of any credits or payments.

53.     Plaintiff fully performed the work and services requested by Defendants, by delivering to Defendants such goods, wares, and merchandise as Defendants had requested during the time-period set forth above.

54.     Upon information and belief, Plaintiff fully performed the work and services requested by Defendants by delivering to Defendants such goods, wares, and merchandise as Defendants had requested during the time-period set forth above.

55.     Invoices were duly submitted by Plaintiff to Defendants upon each delivery of goods, wares, or merchandise.

56.     The invoices were not paid by Defendants.

57.     Defendants failed to perform and materially breached the contract when it failed or refused to pay for the goods, wares, or merchandise delivered by Plaintiff.

58.     Because of Defendants' failure to pay Plaintiff for the goods, wares, or merchandise so delivered, Defendants are liable to Plaintiff for Breach of Contract, and Plaintiff is entitled to recover one hundred eighty-seven thousand six hundred dollars ($187,600.00), plus interest, attorney fees, court costs, and other expenses that have been or will be incurred by Plaintiff as a result of Defendants' breach.

59.     Defendants are jointly and severally liable to Plaintiff for the outstanding debt on invoices in an amount not less than one hundred and eighty-seven thousand six hundred dollars ($187,600.00).

60.     No part of said sum has been paid although payment has been duly demanded.

## COUNT II –
## BREACH OF GOOD FAITH AND FAIR DEALING

61.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 60, above, with the same force and effect as if fully set forth herein.

62.     Defendants contracted with Plaintiff in 2021 and 2022 to purchase goods, wares, and merchandise which Plaintiff sells in the ordinary course of its business.

63.     Defendants had a duty to deal fairly and in good faith with Plaintiff. There is an implied covenant of good faith and fair dealing in every contract. The covenant obligates each party to refrain from taking any action that would deprive the other of the benefits of the contract or cause undue hardship or harm to the other party.

64.     By wrongfully denying or refusing payment to Plaintiff for goods, wares, and merchandise delivered by Plaintiff to Defendants, Defendants acted in a manner that deprived

Plaintiff of the right to receive the benefits under their agreement and thus breached its duty to deal fairly and in good faith.

65.     Because of the failure or refusal by Defendants to pay Plaintiff for the goods, wares, and merchandise delivered, Defendants are jointly and severally liable for Breach of The Implied Covenant of Good Faith and Fair Dealing, and Plaintiff is entitled to recover $187,600.00, plus interest, attorney fees, court costs, and all other expenses that have been or will be incurred by Plaintiff as the result of Defendants' breach.

### COUNT III –
### UNJUST ENRICHMENT

66.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 65, above, with the same force and effect as if fully set forth herein.

67.     In 2021 and 2022, Plaintiff was contacted by Defendants on behalf of itself to provide goods, wares, or merchandise. Pursuant to its agreement with Defendants, Plaintiff did produce and deliver to Defendants, and Defendants accepted delivery of, goods, wares, or merchandise valued at $187,600.00.

68.     Defendants benefitted from Plaintiff's delivery of goods, ware, or merchandise while Plaintiff did not receive any compensation or reimbursement for the items it produced and delivered to Defendants.

69.     Equity and good conscience require monetary restitution by Defendants of $187,600.00, plus interest, attorney fees, court costs, and all other expenses that have been or will be incurred by Plaintiff.

**COUNT IV –**
**ACCOUNT STATED**

70.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 69, above, with the same force and effect as if fully set forth herein.

71.     As set forth hereinabove, Plaintiff and Defendants entered into an agreement whereby Plaintiff was to produce, deliver, and sell to Defendants certain goods, wares, or merchandise, which Defendants then benefitted from without paying to Plaintiff any part of the agreed-upon price.

72.     Plaintiff duly provided to Defendants detailed invoices for each batch of goods, wares, or merchandise delivered to Defendants.

73.     Defendants made no objection to any invoice submitted by Plaintiff, and none of the invoices were returned as undeliverable.

74.     Defendants accepted the goods, wares, or merchandise delivered by Plaintiff without objection to the item price, total price, or terms of any submitted invoice.

75.     Defendants retained the unpaid invoices for an unreasonable length of time without asserting any objections to entries on any of the invoices, which established an account stated for the amounts shown as due and owing pursuant to those invoices.

76.     Defendants'' failure to pay to Plaintiff the amount stated and owing on unpaid invoices has damaged Plaintiff, and Plaintiff is entitled to judgment in the amount of not less than $187,600.00.

77.     It is therefore respectfully submitted that Defendants are jointly and severally liable to Plaintiff for the account stated in an amount of not less than $187,600.00.

**COUNT V**
**INFRINGEMENT OF PLAINTIFF'S MARKS**
**LANHAM ACT: 15 U.S.C. 1114(1)(a)**

78.     Plaintiff repeats and realleges paragraphs 1 through 77 above, with the same force and effect as if fully set forth herein.

79.     Defendants' acts as set forth above creates a likelihood of confusion in the minds of customers, potential customers, and consumers regarding Plaintiff's affiliation, connection, or association with, or sponsorship or endorsement of the Mamita's Competitors' products and Defendant's services.  Consumers are likely to be misled into believing that Defendants' use of the Mamita's Freezers and/or sale of goods of Mamita's Competitors through the use of the Mamita's Freezers bearing the Mamita's Trademarks are licensed, sponsored, or otherwise approved by Plaintiff.

80.     Defendants' use of the Mamita's Trademark and the offer for sale and sale of products made by Mamita's Competitors in the Mamita's Freezers constitutes willful infringement of Plaintiff's trademark rights in its Mamita's Trademarks.  Such commercial uses by Defendants was with knowledge of and intended to palm off Plaintiff's goodwill and prior rights to its Mamita's Trademarks, including its registered Mamita's Trademarks.

81.     Plaintiff never authorized Defendants to use the Mamita's Trademarks to sell Competitors' Products as set forth above.

82.     Upon information and belief, Defendants' acts as set forth above were committed with the intent to trade on Mamita's Trademarks' goodwill and cause confusion, mistake and/or to deceive despite having actual knowledge of Plaintiff's rights in its Mamita's Trademarks and that their actions infringe Plaintiff's rights .

83.     Plaintiff's goodwill in its Mamita's Trademarks has substantial value.  Plaintiff is suffering and will continue to suffer immediate and irreparable injury for which there is no adequate remedy at law if Defendants' infringing and unauthorized acts persist and are not enjoined.

84.     Plaintiff is entitled to damages from Defendants pursuant to 15 U.S.C. §1117. Plaintiff is entitled to actual damages sustained by it, the profits of Defendants and the costs of the action, together with the attorney's fees and costs. In the alternative, Plaintiff is entitled to damages in such amount as the Court may deem to be just based on the circumstances of the case.


**COUNT VI**
**INFRINGEMENT OF PLAINTIFF'S MARKS**
**LANHAM ACT: 15 U.S.C. §1114(1)(b)**

85.      Plaintiff repeats and realleges paragraphs 1 through 84 above, with the same force and effect as if fully set forth herein.

86.     Defendants' use of the Mamita's Trademarks on the Mamita's Freezers as set forth above creates a likelihood of confusion in the minds of customers, potential customers, and consumers regarding Plaintiff's affiliation, connection, or association with, or sponsorship or endorsement of the Mamita's Competitors and/or their products and Defendants' services. Consumers are likely to be misled into believing that Defendants' use of the Mamita's Freezers and/or sale of Mamita's Competitors' products through the use of the Mamita's Freezers bearing the Mamita's Marks are licensed, sponsored, or otherwise approved by Plaintiff.

87.     Defendants' use of the Plaintiff's Mark on the Plaintiff's Freezers constitutes willful infringement of Plaintiff' trademark rights in its Mamita's Trademarks.  Such commercial

uses by Defendants were with knowledge of and intended to trade off Plaintiff' goodwill and prior rights to its Mamita's Trademarks, including its registered Mamita's Trademarks.

88.     Plaintiff never authorized Defendants to use the Plaintiff's Marks as set forth above.

89.     Upon information and belief, Defendants' acts as set forth above were committed with the intent to trade on Mamita's Trademarks' goodwill and cause confusion, mistake and/or to deceive despite having actual knowledge of Plaintiff's rights in its Mamita's Trademarks and that their actions infringe Plaintiff's rights.

90.     Plaintiff's goodwill in its Mamita's Trademarks has substantial value.  Plaintiff is suffering and will continue to suffer immediate and irreparable injury if Defendants' infringing and unauthorized acts persist.

91.     Plaintiff is entitled to damages from Defendants pursuant to 15 U.S.C. §1117. Plaintiff is entitled to actual damages sustained by it, the profits of Defendants and the costs of the action, together with the attorney's fees and costs. In the alternative, Plaintiff is entitled to damages in such amount as the Court may deem to be just based on the circumstances of the case.

### COUNT VII –
### FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. §1125(a)

92.     Plaintiff repeats and realleges paragraphs 1 through 91 above, with the same force and effect as if fully set forth herein.

93.     Defendants' conduct as described above is designed to cause confusion and mistake, and to deceive consumers by conveying the false or misleading impression that the products of Mamita's Competitors are approved by Plaintiff even though Plaintiff has no affiliation with Defendant, the Mamita's Competitors, and the products of Mamita's Competitors.

94.     Defendants' use of the Mamita's Trademarks creates a false designation of origin, false or misleading description and/or a misrepresentation of fact likely to cause confusion, mistake or deceive regarding the origin, sponsorship, or approval of the goods, services, or commercial activities of Defendants.

95.     Defendants' actions are willful and are causing immediate and irreparable injury to Plaintiff by diverting sales to products of Mamita's Competitors and by harming Plaintiff's goodwill and reputation.  Such conduct will continue to damage Plaintiff and deceive consumers unless enjoined by this Court.

96.     Upon information and belief, Defendants received substantial revenues and profits arising from its acts of false advertising to which it is not entitled.  Plaintiff also suffered damages as a result of Defendants' conduct of false advertising, for which Defendants are responsible and for which it has no adequate remedy at law.

## COUNT VIII -
## UNFAIR COMPETITION IN VIOLATION OF NEW YORK COMMON LAW

97.     Plaintiff repeats and realleges paragraphs 1 through 96 above, with the same force and effect as if fully set forth herein.

98.     Defendants engaged in a pattern of willful and intentional actions of offering for sale products of Mamita's Competitors in the Mamita's Freezers to the consuming public while failing to inform the consuming public that Plaintiff has no affiliation with Defendants, the Mamita's Competitors, and the Competing Companies products.

99.     Defendants' actions as set forth herein are intended to and are likely to confuse the public as to the origin, source or sponsorship of Defendants' services and/or the products of the Mamita's Competitors, or to cause mistake or to deceive the public into believing that Plaintiff

authorized, sponsored, endorsed, licensed, or affiliated itself with Defendant's services and products of Mamita's Competitors, in violation of Plaintiff's rights in the Mamita's brand and the Mamita's Trademarks under New York State common law.

100.    Upon information and belief, Defendants have engaged in wrongful actions with constructive and/or actual knowledge that those actions would mislead consumers as to Defendants' relationship with Plaintiff.  Given that Defendants have willfully misled consumers in the above-referenced manner, Defendants have been unjustly enriched, and Plaintiff has been damaged.

101.    Defendants have been and will continue to be unjustly enriched at Plaintiff's expense while they misappropriate and trade upon the goodwill and reputation of Plaintiff unless enjoined by this Court.

102.    Defendants' wrongful conduct constitutes unfair competition under New York common law. Plaintiff has no adequate remedy at law.

103.    Defendants' conduct have caused and is causing immediate and irreparable injury to Plaintiff and will continue to harm Plaintiff and mislead the public unless enjoined by this Court.


### COUNT IX –

### VIOLATION OF NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT IN VIOLATION OF NY GEN. BUS. LAW 349

104.    Plaintiff repeats and realleges paragraphs 1 through 103 above, with the same force and effect as if fully set forth herein.

105.    By reason of the acts set forth above, Defendants have been engaging and are engaged in deceptive acts or practices in the conduct of a business, trade, or commerce, in violation of Section 349 of the New York General Business Law.

106.    Defendants' actions are willful and in utter disregard for Plaintiff's rights.

107.    Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade, or commerce, in violation of Section 349 of the New York General Business Law.  Plaintiff has no adequate remedy at law.

108.    Defendants have caused and are causing immediate and irreparable injury to Plaintiff and will continue to harm Plaintiff and deceive the public unless enjoined by this Court.

## COUNT X –
## FALSE ADVERTISING IN VIOLATION OF NY GEN. BUSINESS LAW 350

109.    Plaintiff repeats and realleges paragraphs 1 through 108 above, with the same force and effect as if fully set forth herein.

110.    By reason of the acts set forth above, Defendants have been and are engaged in consumer-oriented advertising and marketing in the conduct of their businesses, trades and/or commerce that are false and misleading in material respects, in violation of Section 350 of the New York General Business Law.

111.    Upon information and belief, Defendants have engaged in false advertising through the use of the Mamita's Trademarks in order to induce customers to purchase products of competitors of Plaintiff from Defendants. Plaintiff has no adequate remedy at law.

112.    Defendants' conduct described herein is causing immediate and irreparable injury to Plaintiff, both by direct diversion of sales and by harming the Plaintiff trademarks and goodwill

and reputation and will continue to damage Plaintiff and deceive and harm the public unless enjoined by this Court.

**WHEREFORE**, Plaintiff Mamita's Ices, Ltd. prays that this Court:

1. Enter judgment in favor of Plaintiff and against Defendants, jointly and severally, on all Counts of the Complaint;

2. On the Plaintiff's causes of action for Breach of Contract, Breach of Good Faith and Fair Dealing, Unjust Enrichment and Account Stated, award to Plaintiff the sum of $187,600,00, payable by Defendants jointly and severally, together with prejudgment and post-judgment interest at the maximum applicable legal rate(s);

3. Award Plaintiff monetary damages, in an amount to be determined at trial, for each and every infringing and deceptive act by Defendants, plus statutory interest;

4. Award Plaintiff enhanced damages, attorneys' fees, and costs;

5. Order Defendants to disgorge all profits realized from the sale of the Mamita's Competitors' products;

6. Order Defendants to permanently and completely remove images of the Mamita's Trademarks from the Mamita's Freezers, or, alternatively, order Defendants to immediately stop, cease, and desist from the use of any freezers branded with Mamita's Trademarks;

7. Enter a preliminary injunction enjoining and restraining Defendants, their directors, officers, agents, servants, employees, attorneys, subsidiaries, affiliated companies, parents, successors, and assigns, and all persons in active concert or participation with Defendants

who receive actual notice of this Court's orders by personal service or otherwise, from using the Mamita's Trademarks in any form or manner;

8. Enter a permanent injunction enjoining and restraining Defendants, their directors, officers, agents, servants, employees, attorneys, subsidiaries, affiliated companies, parents, successors, and assigns, and all persons in active concert or participation with Defendants who receive actual notice of this Court's orders by personal service or otherwise, from using the Mamita's Trademarks in any form or manner; and

9. Award such further relief as the Court deems just and appropriate.


<u>Jury Demand</u>

The Plaintiff demands a trial by jury on all issues so triable.


Dated: New York, New York
      August 8, 2022

/s/ Jonathan Berger
Jonathan Berger, Esq.
*jberger@llbl.com*
Levisohn Berger LLP
11 Broadway, Suite 615
New York, NY 10004
212-486-7272

Samuel L. Drukman, Esq.
*samdrukmanmaesq0803@gmail.com*
300 Cadman Plaza West
Brooklyn, NY 11201
718-401-6800
*Of Counsel*

*Attorneys for Mamita's Ices Ltd.*

21